# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SANDRA, W.**[1], <br><br>        Plaintiff, <br><br>    v. <br><br>**NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br>        Defendant. | Case No. 3:18-cv-1019-SI <br><br>**OPINION AND ORDER** |

George J. Wall, 825 NE 20th Avenue, Suite 330, Portland, Oregon 972432. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Michael Howard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Sandra W. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Social Security Disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 416

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

and 423. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because Plaintiff's date last insured was June 30, 2019, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. After carefully reviewing the ALJ's decision and the evidence in the record, the Court affirms the decision of the ALJ.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.
PAGE 2 – OPINION AND ORDER

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on August 12, 1964 and was 49 years old at the alleged disability onset date. Plaintiff has at least a high school education, is able to communicate in English, and previously worked as a retail store manager and a salesperson. AR 35. Plaintiff previously filed for DIB on January 20, 2006. A determination that Plaintiff was not disabled, made on February 9, 2006, became administratively final when Plaintiff did not appeal that determination. AR 21. Plaintiff filed a second DIB application as well as an SSI application on December 18, 2007. *Id.* Both applications were denied on March 26, 2008 and became administratively final when Plaintiff did not appeal. Plaintiff filed a third application for DIB on July 25, 2011. *Id.* This application was also denied and, on appeal, an administrative law judge ("ALJ") determined that Plaintiff was nod disabled in a written opinion on November 14, 2013. That decision became administratively final when Plaintiff did not appeal the ALJ's decision.

Plaintiff filed her current application for DIB and SSI on October 3, 2014, alleging disability beginning November 15, 2013. The claims were denied initially on January 13, 2015 and upon reconsideration on July 23, 2015. Plaintiff filed a written request for a hearing before an ALJ. A hearing was held on March 29, 2017. Plaintiff testified and was represented by counsel. An impartial medical expert, Dr. Ronald Devere, MD and an impartial vocational expert, Dr. Robert Gaffney, also testified. On May 8, 2017, the ALJ issued a written decision denying Plaintiff's applications. AR 38. Plaintiff sought review by the Appeals Council, but the Appeals Council denied Plaintiff's request for review on April 4, 2018, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff seeks judicial review of that decision.

B.  **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. Thus, Plaintiff must establish disability on or before that date. The ALJ then conducted the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 24. At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis; cognitive disorder; and mental health problems with a history of diagnoses including attention deficit hyperactivity disorder ("ADHD") and bipolar disorder. AR 25. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she cannot more than occasionally stoop or balance; she cannot climb ladders, ropes, or scaffolds; she cannot be exposed to extremes of heat or cold, unprotected heights, or workplace hazards; she is limited to frequent fine fingering; and finally, she can perform simple, entry-level work in a routine environment, involving not more than occasional interaction with the public.

AR 28.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. AR 35. At step five, the ALJ determined that Plaintiff was not under a disability because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including room cleaner and photocopy machine operator. AR 36.

# DISCUSSION

Plaintiff contends that the ALJ erred in (1) improperly rejecting Plaintiff's testimony regarding fatigue, and (2) improperly rejecting the opinion of treating and examining physicians including Dr. Barbara Hills, MD, Dr. Ruth Whitham, MD, and Dr. Ghadah Altowajiri, MD.

## A. Plaintiff's Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Plaintiff argues that the ALJ implicitly rejected Plaintiff's testimony regarding fatigue because Plaintiff's reported degree of fatigue is inconsistent with the light exertional RFC that the ALJ imposed. Plaintiff testified that her fatigue makes her limbs feel heavy and she sits or lies down once or twice each day for an hour. The ALJ concluded that Plaintiff's testimony regarding her symptoms of pain and fatigue supported the ALJ's determination that Plaintiff's RFC should be reduced to less than light work.

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). . . . *[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.*

Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983) (emphasis added).

Defendant argues, and the Court agrees, that the ALJ's decision to impose a light exertional level RFC is consistent with Plaintiff's testimony regarding her fatigue. A light exertional level would allow Plaintiff, consistent with her testimony, to sit for an hour or two per day. The ALJ did not reject Plaintiff's testimony, but instead formulated an RFC that accommodates Plaintiff's need to sit for an hour or two every day. On this point, the ALJ did not err.

**B. Medical Opinion Testimony**

Plaintiff argues that the ALJ should have given more weight to the opinions of her treating physician and two examining physicians. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d

at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

The ALJ gave little weight to the opinion of Dr. Hills, a treating physician. The ALJ noted that Dr. Hills's treatments notes are inconsistent with her "extreme assessment" of Plaintiff

as well as inconsistent with the opinions of the medical expert Dr. Devere, and physicians Dr. Alley, Dr. Berner, Dr. Gostnell, Dr. Hennings, and Dr. Boyd. In February 2014 Dr. Hills examined Plaintiff and observed that Plaintiff was scattered and disorganized, but concluded that Plaintiff had full motor strength, intact reflexes, and normal gait. AR 416. Even Dr. Hills's conclusions regarding Plaintiff's disability are inconsistent. Although Dr. Hill opined in February 2014 that she would "support [Plaintiff's] disability" based on Plaintiff's cognitive issues, in October 2015, Dr. Hills refused to address Plaintiff's disability claim. AR 479. Additionally, when Plaintiff saw Dr. Hills in October 2015, she had been off her MS medications for quite a while and had not seen Dr. Hills in a year and a half. AR 478. The ALJ concluded that the medical evidence shows that Plaintiff's MS is generally controlled and responsive to treatment, so the fact that Plaintiff had not been taking medication in quite a while when Dr. Hills examined her further undermines Dr. Hills's opinion. The ALJ provided specific and legitimate and legitimate reasons for giving little weight to Dr. Hills' February 2014 legal conclusion that Plaintiff was disabled because Dr. Hills's medical opinion was inconsistent with the treatment notes, inconsistent with Dr. Hills's 2015 assessment, and inconsistent with the other medical opinions.

The ALJ also gave less weight to the opinions of Dr. Altowaijri and Dr. Whitman who jointly examined Plaintiff in November 2015. Dr. Altowaijri reviewed a report prepared by Dr. Gostnell, but as the ALJ observed, Dr. Altowaijri appears to have reached a very different conclusion based on Dr. Gostnell's report than Dr. Gostnell did, or than the report itself would suggest. Dr. Gostnell reported that Plaintiff was "calm and focused, with minimal emotional reactions to challenges and errors . . . . she had no apparent difficulty comprehending interview questions, although during the formal testing she often seemed to misunderstand directions . . . .

PAGE 11 – OPINION AND ORDER

Her thought processing was logical, coherent and linear, but somewhat ruminative. . . . She seemed to have good insight in regard to her psychological functioning. . . . She was attentive, persistent, and gave full effort throughout the exam." AR 453. Dr. Gostnell performed a full examination of Plaintiff and concluded that Plaintiff's "neuropsychological test profile falls mostly within normal limits." AR 454. Dr. Gostnell noted that "[a] slight relative impairment involving neurologically sensitive cognitive functions (working memory and visuomotor processing) . . . both falling within the low average range, [which] suggests marginal impairments." AR 454. Dr. Gostnell reviewed the examination notes and conclusions from Dr. Cogburn from 2012 and concluded that there was little change between 2012 and 2015, and Plaintiff scored "essentially normal on both occasions." He noted that, "[a]lthough multiple sclerosis is certainly a risk factor for neurocognitive disorder, neither exam provided evidence of significant cognitive loss." AR 455. The ALJ gave great weight to the opinions of Dr. Gostnell.

When Dr. Altowaijri and Dr. Whitman reviewed Dr. Gostnell's report, they interpreted it to have documented "impaired working memory, processing speed, calculations, speech accuracy and spatial addition score." AR 485. But these conclusions are inconsistent with Dr. Gostnell's report, which found that Plaintiff's cognitive abilities were essentially normal and showed no evidence of significant cognitive loss. AR 455. Furthermore, Dr. Altowaijri and Dr. Whitman concluded that Plaintiff was disabled and unable to work, a legal conclusion that is reserved for the Commissioner and therefore entitled to no weight. By noting that Dr. Altowaijjri and Dr. Whitman's conclusions regarding Plaintiff's cognitive abilities were inconsistent with the conclusions of Dr. Gostnell, despite the fact that they relied on Dr. Gostnell's report, the ALJ provided specific and legitimate reasons for giving less weight to their opinions.

Overall, the ALJ gave less weight to the medical opinions that opined on the legal conclusion that Plaintiff was disabled (Drs. Hills, Altowaijri, and Whitman) and more weight to the medical opinions from physicians who are more familiar with the social security and disability system. Dr. Hennings and Dr. Boyd formulated their opinions based on a review of the record and their opinions were consistent with the evidence, which documents some cognitive deficits but otherwise shows that Plaintiff remains mostly functional. Dr. Alley and Dr. Berner are also experts in disability evaluation and provided assessments of Plaintiff's functional limitations that are consistent with the medical evidence in the record. In particular, their opinions were consistent with the record evidence showing that Plaintiff has responded well to treatment over the years. AR 33. Finally, the ALJ gave weight to the opinion of Dr. Devere, an impartial medical expert and neurologist with expertise in multiple sclerosis. Dr. Devere testified that Plaintiff's normal neurological examination shows no evidence of dementia or cognitive impairment resulting from Plaintiff's multiple sclerosis. AR 31. It is the ALJ's duty to weigh conflicting medical evidence, and the Court finds that the ALJ provided specific and legitimate reasons for giving more weight to the opinions of Dr. Gostnell, Dr. Alley, Dr. Berner, Dr. Hennings, Dr. Boyd, and Dr. Devere over the opinions of Dr. Hills, Dr. Altowaijri, and Dr. Whitman.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is affirmed.

**IT IS SO ORDERED**.

DATED this 17th day of July, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge